**LESTER H., a minor, who sues by his mother and next friend, OCTAVIA P., and Octavia P., on her own behalf,**

v.

**Thomas K. GILHOOL, Secretary of Education, Commonwealth of Pennsylvania and The Chester Upland School District.**

**Appeal of CHESTER UPLAND SCHOOL DISTRICT.**

**No. 89–2046.**

United States Court of Appeals, Third Circuit.

Argued July 12, 1990.

Decided Sept. 27, 1990.

Rehearing and Rehearing In Banc Denied Oct. 24, 1990.

Leo A. Hackett (argued), Fronefield & deFuria, Media, Pa., for appellant.

Janet F. Stotland (argued), Education Law Center, Inc., Philadelphia, Pa., for appellees.

Before BECKER, HUTCHINSON and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

In this declaratory judgment action brought pursuant to the Education of the Handicapped Act ("EHA"), 20 U.S.C. §§ 1401–1415, *as amended,* Education for All Handicapped Children Act of 1975, Pub.L. No. 94–142, and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1973), the district court awarded the plaintiff, Lester H., two and one half years of compensatory education beyond age 21, the statutory maximum specified in the EHA. App. at 31; 20 U.S.C. § 1412(2)(B). The Chester Upland School District ("School District") appealed.[1] We will affirm.

### I.

The plaintiff, Lester H., is a profoundly retarded twelve-year-old with severe behavioral problems. Lester began his education within the School District in the fall of 1983. But even before Lester entered school, the District Director of Special Education determined that the School District could not provide an appropriate special education program for him. Parties' Stipulations ("Stipulations") at ¶ 13, app. at 37. The School District, Lester's mother and the Delaware County Intermediate Unit ("IU") agreed that Lester should be placed at the Summit School, a special education day-facility, for that academic year. Stipulations at ¶ 14, app. at 37. Octavia P., Lester's mother, signed a Notice of Recommended Assignment ("NORA") consenting to the Summit School placement. He remained at Summit throughout the year and progressed with his Individualized Education Program ("IEP"). Stipulations at ¶ 17, app. at 38.

The next fall, Lester's behavior deteriorated significantly. In October 1984, the Director, Summit officials and Lester's teacher concluded that Summit could no longer provide an appropriate education for Lester and they recommended that he be placed in a residential program. Stipulations at ¶¶ 21, 28–9, app. at 39, 41–42. Nevertheless, Lester remained at Summit during the 1984–85 school year because the School District limited its efforts to place him to only one approved school, the Elwyn Institute, and one unapproved school, the Don Guanella School. Both schools rejected him. Stipulations at ¶¶ 38, 40, app. at 43–44. Lester was finally removed from Summit in August, 1985. Lester's mother signed a NORA consenting to in-home instruction while her child awaited appropriate residential placement. Stipulations at ¶¶ 48, 51, app. at 45. The School District then developed an in-home IEP for the 1985–86 academic year which provided Lester with only five hours of instruction per week. This IEP began on November 11, 1985 and, with revisions, continued until late June, 1986. Stipulations at ¶ 54, app. at 46; ¶ 64, app. at 47.

For the majority of Lester's home-bound instruction period, the School District did not request residential placement for him. In April, 1986, the School District applied to the Devereux Foundation and the Wordsworth Academy. Both schools rejected Lester. Finally, after prodding by Lester's counsel and the Pennsylvania Department of Education ("DoE"), the School District re-applied to Elwyn. Lester was admitted to Elwyn's Extended School Year day program in June, 1986 and his mother signed a NORA consenting to this placement. Stipulations at ¶¶ 59–64, app. at 47. He lasted only 34 days at Elwyn and was returned to in-home instruction. Stipulations at ¶ 67, app. at 48.

During August and September, 1986, the School District applied to four schools. All four schools rejected Lester. Stipulations at ¶¶ 69–72, app. at 48–49. Lester's counsel then petitioned the Chief of the Bureau of Special Education of the DoE requesting that he assist in locating an appropriate special education program for Lester. Stipulations at ¶ 73, app. at 49. In response DoE required the School District to provide it with a status report and suggested that the Director apply to the AuClair

---

1. The Secretary of Education for the Common-    wealth of Pennsylvania did not appeal.

School, an out-of-state facility located in Bear, Delaware. Stipulations at ¶¶ 75–6, app. at 50.[2] Lester was admitted and has attended AuClair since January 21, 1987, and is making slow but satisfactory progress.

The EHA requires the School District to provide an appropriate education for Lester until he reaches age 21. The foundation of this case is that, for 2½ years, the School District failed to do so. *See generally* 20 U.S.C. § 1412; App. at 29. Before the School District placed Lester at AuClair, Octavia P., on behalf of her son, filed this declaratory judgment action against the Commonwealth of Pennsylvania, Secretary of Education and the School District, seeking a declaration that Lester's right to a free appropriate education had been compromised and that he was entitled to appropriate education services for 2½ years beyond age 21 as compensation "for the period during which he was denied appropriate services." App. at 15.

Lester moved for a preliminary injunction requiring that he be immediately placed in a residential special education program. The motion was denied as moot when AuClair admitted Lester.[3] App. at 2. The district court held a trial on the remaining issue in the spring of 1988 and entered a declaratory judgment order on November 9, 1989, awarding Lester 2½ years of compensatory education to extend beyond age 21. App. at 6. On appeal, the School District claims that: (1) this case is not ripe for judicial relief; (2) Lester failed to exhaust administrative remedies provided him by the EHA; (3) eleventh amendment sovereign immunity bars Lester's action against the School District; and (4) compensatory education is not an available EHA remedy.

## II.

■ The district court held that "[t]his case is ripe and otherwise justiciable." App. at 30. Our review of the ripeness decision is plenary. *Felmeister v. Office of*

*Attorney Ethics*, 856 F.2d 529, 535 n. 8 (3d Cir.1988). "[R]ipeness turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Devel. Comm'n*, 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (*quoting Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)); *see also Consolidated Rail Corp. v. United States*, 812 F.2d 1444 (3d Cir.1987).

■ The School District argues that a compensatory remedy requires the court to ascertain Lester's future educational needs and these needs are not ripe for decision. This is simply not true. The injury has been done and although the exact contours of the appropriate remedy may not be ascertainable now, Lester's injury certainly could be, and was, ascertained. Moreover, the court left ample room for the exact contours of the remedy to be shaped by the appropriate authorities at the appropriate time. All the court did was award Lester the number of years needed to restore that which concededly had been denied him and that to which he is entitled under 20 U.S.C. § 1412(2)(B).

The School District contends that the court is predicting Lester's future educational needs by awarding him 30 months of compensatory education beyond age 21. We agree that courts may not engage in speculation. *See DeFunis v. Odegaard*, 416 U.S. 312, 320 n. 5, 94 S.Ct. 1704, 1707 n. 5, 40 L.Ed.2d 164 (1974) (*per curiam*) (citations omitted). But here the district court did not speculate. It conceded that it was unable to predict Lester's future educational needs, and wisely left the "form or components of the instructional program" to be determined, once Lester reaches age 21, by the collective effort of school officials, parents and professionals as required by the

---

**2.** The Director applied to no out-of-state schools before AuClair. Stipulations at ¶ 77, app. at 50.

**3.** That order is not at issue in this appeal.

EHA.[4] The district court granted Lester a compensatory remedy totalling 30 months to offset "that period of deprivation of [Lester's] entitlement before the age of 21." App. at 31. We conclude that these issues are fit for determination.

Second, a decision at this time poses no hardship for the School District. Indeed, it gives them additional time to prepare for Lester's compensatory education. Conversely, it would pose a hardship to Lester and Octavia if they are required to wait. School District officials involved in Lester's placement or misplacement are available to answer for their actions or inaction. Experts who examined Lester are available to testify with events fresh in their minds. In short, now is the most convenient time for all parties to present evidence as to whether Lester received an appropriate placement, whether one was available, and the extent of the efforts made by the School District to find an appropriate placement. We conclude that the trial posed no hardship and the matter was ripe for decision.

### III.

The legal guardian of a student not receiving an appropriate education has certain administrative remedies under the EHA. They are designed to afford the complainant maximum due process. *See generally* 20 U.S.C. § 1415. First, the guardian is entitled to a due process hearing before the state department of education, the intermediate unit, or the local educational department (i.e.: the School District). 20 U.S.C. § 1415(b)(2). Second, if the hearing is not before the state department of education, the guardian may appeal a decision of a local or intermediate unit directly to that state agency. 20 U.S.C. § 1415(c). Third, if dissatisfied with the agency's decision, whether from an initial hearing or on direct appeal, the guardian may seek relief in a federal or state court. 20 U.S.C. § 1415(e)(2); *see Doe v. Smith,* 879 F.2d 1340, 1341 (6th Cir.1989), *cert. denied sub nom. Doe v. Sumner Cty.*

Bd. of Educ., —— U.S. ——, 110 S.Ct. 730, 107 L.Ed.2d 749 (1990) (listing the EHA procedural elements required for exhaustion).

■ The School District contends that Lester failed to exhaust his available administrative remedies. Although this contention has facial appeal, upon examination we agree with the district court's conclusion that exhaustion would have been futile. "[C]ircumstances which require a waiver of the exhaustion requirement raise questions of law. Therefore, [our] standard of review is plenary." *Wilkerson v. Bowen,* 828 F.2d 117, 119 (3d Cir.1987). Absent futility, the EHA requires a plaintiff to exhaust administrative avenues before seeking relief in the federal or state courts. *See Honig v. Doe,* 484 U.S. 305, 326–28, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988); *Tokarcik v. Forest Hills School Dist.,* 665 F.2d 443, 447 n. 5 (3d Cir.1981), *cert. denied sub nom. Scanlon v. Tokarcik,* 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982); *Doe,* 879 F.2d at 1343. The basis for the district court's futility finding is that the issues involved here were purely legal, not factual, and that the administrative process was powerless to address the issue of whether compensatory education was appropriate. We agree.

■ Courts require exhaustion where the peculiar expertise of an administrative hearing officer is necessary to develop a factual record. *Cox v. Jenkins,* 878 F.2d 414, 419 (D.C.Cir.1989); *Christopher W. v. Portsmouth School Comm.,* 877 F.2d 1089, 1094 (1st Cir.1989) (*citing McKart v. United States,* 395 U.S. 185, 194–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969) and *Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770, 774 (1st Cir.1981)). However, where the factual record is fully-developed and no evidentiary disputes remain, the court can and should decide legal issues. *Christopher W.,* 877 F.2d at 1095, 1099 (no exhaustion required where remaining issues are pure matters of law); *Mrs. W v. Tirozzi,* 832 F.2d 748, 759 (2d Cir.1987);

---

4. *See* app. at 30–31, *citing* 20 U.S.C. §§ 1401(19), 1412(4), (5)(C), 34 C.F.R. §§ 300.340–300.346,

300.530–300.534 (1986).

*Ezratty,* 648 F.2d at 774. The administrative hearing is to receive evidence bearing on whether a particular placement is appropriate or not. Both remaining parties agree that the in-home IEP was inappropriate and supposed to be temporary, and that the School District took approximately 2½ years to locate an appropriate program for Lester H.[5] Stipulations at ¶ 51, app. at 45; ¶¶ 51–86, app. at 45–52. Thus, the factual question of injury, usually determined at the administrative level, was conceded in this case because everyone agreed that Lester should not have been at home or at Summit. The only relief the administrative process could have given to Octavia was an IEP stating that Lester should be placed elsewhere. Because everyone already agreed on that point, that clearly was not what Lester needed. What he needed was substantive relief because the school district failed to find an appropriate IEP. The administrative process could not have given that to him; it had no power to grant compensatory education. Therefore, the district court correctly decided that the remedial issue was a pure question of law and that administrative process need not be pursued.[6]

## IV.

█ The district court concluded that the eleventh amendment did not protect the School District from Lester's EHA claims. The School District alleges this to be error. Our review is plenary. *Edelman v. Jordan,* 415 U.S. 651, 677–78, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974); *Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 658 n. 1 (3d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989). We believe the district court is correct.

The eleventh amendment provides that: The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const., amend. XI.

To determine whether the School District is insulated by eleventh amendment immunity, we must decide whether a Pennsylvania school district is an alter ego of the Commonwealth of Pennsylvania. This depends upon the powers granted the school district by the state. *Mt. Healthy City School District Board of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

In *Mt. Healthy,* the Court held that the school district did not share in Ohio's eleventh amendment immunity. Under Ohio law, the term "political subdivision" includes school districts, but the state "does not include political subdivisions." *Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. at 572. Ohio provides its school districts with significant amounts of money. But local school districts retain extensive power to issue bonds and levy taxes subject to certain state restrictions. *Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. at 573. The Court concluded that the school district was "more like a county or city than ... like an arm of the state," 429 U.S. at 280–81, 97 S.Ct. at 573, and denied immunity.

This School District's situation under Pennsylvania law is virtually indistinguishable. The term "political subdivision" includes a school district, but the term "commonwealth" does not include political sub-

**5.** The School District admitted that Lester's placement at the Summit School was inappropriate beginning on October 19, 1984. Stipulations at ¶ 28, app. at 41. He was finally placed at AuClair on January 21, 1987. Stipulations at ¶ 86, app. at 52.

**6.** Evidently, concomitant to this argument, the School District asserts that when Octavia signed the NORA and consented to each in-home IEP, she waived her right to argue futility and "should not now be heard to argue either that

the placements were inappropriate or that they should be granted compensatory education beyond age 21 for a period measured by the duration of the placements which they approved." Appellant's Brief at 23. The argument is totally without merit. All Octavia could contest is that which the School District concedes anyway: the placement was inappropriate. Further, Octavia consented to an in-home placement that was supposed to be temporary.

divisions. 1 Pa. Cons. Stat. Ann. § 1991 (Purdon Supp.1990). A school district is an incorporated entity with a statutory right to sue and be sued. 24 Pa.Stat.Ann. §§ 2–211, 2–213 (Purdon 1988). The Commonwealth does exercise control over educational appropriations, Pa.Stat.Ann. tit. 24, § 25–2501 et seq. (Purdon Supp.1990), and the creation of state agency liaison services called "intermediate units,"[7] Pa. Stat.Ann. tit. 24, § 9–951 (Purdon 1988). But, local school districts are able to issue bonds, Pa.Stat.Ann. tit. 24, § 6–632 (Purdon 1988), and collect taxes, Pa.Stat.Ann. tit. 24, § 5–507 (Purdon 1988). When we examine the "nature of the entity created by state law", Mt. Healthy, 429 U.S. at 280, 97 S.Ct. at 572, and balance the facts supplied by the record, we conclude that the status of school districts under Pennsylvania law is the same as the status of the Ohio school board in Mt. Healthy.

The School District argues additionally that the Commonwealth's control over special education services creates a different situation. See Geis v. Board of Educ. of Parsippany–Troy Hills, 774 F.2d 575, 580 (3d Cir.1985) (assuming, but not deciding, that a New Jersey school board in its special education capacity acquired eleventh amendment immunity); but cf. Fitchik, 873 F.2d at 661 (a school district's lack of immunity is "crystal clear" after Mt. Healthy) and In re Real Est. Title & Settlement Serv. A. Lit., 869 F.2d 760, 765 n.

3 (3d Cir.), cert. denied sub nom. Chicago Title Ins. Co. v. Tucson Unified School Dist., —— U.S. ——, 110 S.Ct. 77, 107 L.Ed.2d 44 (1989). To support this argument, the School District states that the Commonwealth provides a significant amount of funding for special educational services. See Pa.Stat.Ann. tit. 24, §§. 13–1373, 1373.1, 1376 (Purdon 1988). This is true, but the School District even in special education remains primarily responsible for providing, administering and maintaining special education services. Pa.Stat.Ann. tit. 24, §§ 13–1372(3), (4), (Purdon 1988).[8] Like the court in Mt. Healthy, we conclude that a "significant amount of" state funding does not outweigh the established independent nature of a Pennsylvania school district. 429 U.S. at 280, 97 S.Ct. at 573. We hold, therefore, that the School District does not acquire the Commonwealth's eleventh amendment immunity for special education services.[9]

## V.

The next issue is whether the compensatory education granted by the district court is proper relief. Our inquiry and the scope of review are two-tiered. First, we consider whether Congress empowered the courts to grant a compensatory remedy under 20 U.S.C. § 1415(e)(2). We exercise plenary review over this question. See School Committee of Burlington v. Department of Educ., 471 U.S. 359, 370–71, 105 S.Ct.

---

**7.** We have previously held that intermediate units are "subject to suit as 'local agencies' under the Pennsylvania Political Subdivision Tort Claims Act." Arnold v. BLaST IU # 17, 843 F.2d 122, 124 (3d Cir.1988).

**8.** We note that the Commonwealth's control over special education standards and regulations under Pa.Stat.Ann. tit. 24, §§ 13–1372(1), (2) (Purdon 1988) does not diminish the School District's responsibility for providing these services.

**9.** By holding that the School District, in its special education capacity, does not share in the Commonwealth's eleventh amendment immunity, we are in accord with other courts of appeals relying on a Mt. Healthy-type analysis. See Minton v. St. Bernard Parish School Board, 803 F.2d 129, 131–32 (5th Cir.1986) (inherent local character of Louisiana school boards considered

critical); Fay v. South Colonie Central School Dist., 802 F.2d 21, 27 (2d Cir.1986) (state funding and role as "receptacle" of state education policy do not make school districts alter egos of the state); Gary A. v. New Trier High School Dist. No. 203, 796 F.2d 940, 944–46 (7th Cir. 1986) (per curiam) (In suit for tuition reimbursement under EHA, local school district defendants not entitled to eleventh amendment immunity or limited purpose immunity); Travelers Indem. Co v. School Bd. of Dade County, 666 F.2d 505, 509 (11th Cir.), cert. denied, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982) (state provision of funds for school construction project did not cloak county school board with eleventh amendment immunity. Damages must come unconditionally out of state treasury). But cf. Martinez v. Board of Educ. of Taos Municipal School Dist., 748 F.2d 1393 (10th Cir. 1984) (State of New Mexico retains broad sweeping control over public education).

1996, 2003, 85 L.Ed.2d 385 (1985). Second, if the remedy is available, we review to see whether the district court abused its discretion by granting the remedy to Lester. 20 U.S.C. § 1415(e)(2).

■ An aggrieved party may seek relief in federal court. 20 U.S.C. § 1415(e)(1). The court may award whatever relief "[it] determines is appropriate," 20 U.S.C. § 1415(e)(2), to redress the deprivation of rights under 20 U.S.C. § 1412(2)(B). Section 1412(2)(B) reads:

> (2) .... Each such amended plan shall set forth in detail the policies and procedures which the State will undertake or has undertaken in order to assure that— (B) a free appropriate public education will be available for all handicapped children between the ages of three and eighteen within the State not later than September 1, 1978, and for all handicapped children between the ages of three and twenty-one not later than September 1, 1980 ...

20 U.S.C. § 1412(2)(B).

The School District argues that the Court in *Honig, supra* relied upon section 1412(2)(B) to deny equitable relief to persons over age 21. The *Honig* Court concluded that Doe, age 24, was "no longer entitled to the protections and benefits of the EHA, which limits eligibility to disabled children between the ages of three and 21." *Honig,* 108 S.Ct. at 601, *citing* 20 U.S.C. § 1412(2)(B). The Court reasoned that Doe could no longer claim injunctive relief because the Act did not cover him. *Honig,* 108 S.Ct. at 601. In *Board of Educ. of E. Windsor Regional School Dist. v. Diamond,* 808 F.2d 987, 991 (3d Cir.1986), we wrote that Section 1412(2)(B) requires a state "to provide a 'free appropriate education' to every disabled child." Thus, under Section 1415(e)(2), a district court is empowered to provide a remedy for individual handicapped children who are deprived of that right.

The crucial difference between *Honig* and Lester's case is the nature of the relief. In *Honig,* Doe was only asking that the Court make the District comply with the Act in the future. But, as an adult (i.e., someone over age 21), Doe had no right to demand that the District comply with the Act either presently or in the future. The Act only gives minors the right to education. Lester, in contrast, is only requesting a remedy to compensate him for rights the district already denied him. He has the right to ask for compensation because the School District violated his statutory rights while he was still entitled to them.

If *Honig* stands for the proposition defendants assert, school districts would be immune from suit if they simply stopped educating intended beneficiaries of the EHA at age 18 or 19. Those beneficiaries' cases would take at least two years to be reviewed, and even if the reviewing courts found the school districts' behavior egregious, the courts would be powerless to aid the intended beneficiaries because those beneficiaries would now be over age 21. We cannot believe that either Congress or the Supreme Court meant to allow a school district to withhold a disabled minor's educational rights at age 18 or 19 without remedy.

Neither is the form of remedy, compensatory education, foreclosed by *Honig.* Relief designed to cure deprivations under 20 U.S.C. § 1412(2)(B) must accord with congressional intent. *See Burlington,* 471 U.S. at 370–71, 105 S.Ct. at 2003. In *Burlington,* the Supreme Court held that tuition reimbursement constitutes appropriate relief under the EHA because it "merely requires the Town to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." 471 U.S. at 370–71, 105 S.Ct. at 2003. Furthermore, tuition reimbursement addresses "[a] child's right to a *free* appropriate public education," and satisfies the congressional intent to provide relief which remedies the deprivation of that right. *Burlington,* 471 U.S. at 370, 105 S.Ct. at 2003, (emphasis in original).

*Miener v. State of Missouri,* 800 F.2d 749 (8th Cir.1986) extended this rationale to compensatory education, adding that the School District "should [not] escape liability for [educational] services simply because [the parent] was unable to provide them in

the first instance.... We are confident that Congress did not intend the child's entitlement to a *free* education to turn upon her parent's ability to 'front' its costs." *Miener,* 800 F.2d at 753. The *Miener* court reasoned that compensatory education, like tuition reimbursement, cures the deprivation of a handicapped child's statutory rights, thus providing a remedy which Congress intended to make available. 800 F.2d at 753; *accord Burr v. Ambach,* 863 F.2d 1071, 1078 (2d Cir.1988), *vacated and remanded on other grounds sub nom. Sobol v. Burr,* — U.S. —, 109 S.Ct. 3209, 106 L.Ed.2d 560 (1989), *reaff'd,* 888 F.2d 258 (2d Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1298, 108 L.Ed.2d 475 (1990) ("We do not believe that Congress intended to provide a right without a remedy"); *Jefferson County Bd. of Educ. v. Breen,* 853 F.2d 853, 857–58 (11th Cir.1988) (both remedies necessary "to preserve a handicapped child's right to a free education.") *Miener* also noted that compensatory education satisfies Congress' intent to channel available resources to programs benefitting the handicapped. 800 F.2d at 753, *citing Smith v. Robinson,* 468 U.S. 992, 1020, 104 S.Ct. 3457, 3474, 82 L.Ed.2d 746 (1984),[10] *quoting* 121 Cong.Rec. 19501 (1975).[11]

■ We conclude that Congress empowered the courts to grant a compensatory remedy. Furthermore, we conclude that Congress, by allowing the courts to fashion an appropriate remedy to cure the deprivation of a child's right to a free appropriate public education, did not intend to offer a remedy only to those parents able to afford an alternative private education. The only question remaining then is whether the court abused its discretion by granting 30 months of compensatory education to Lester beyond age 21. We conclude that it did not.

The School District had no reason to delay a proper placement for Lester. It knew before he entered the school system that it could not provide an appropriate educational program for him. Stipulations at ¶ 13, app. at 37. The court found that the District "should have known or could have ascertained from the approved schools list that there were at least six Pennsylvania schools" suitable for Lester, and that it could have "applied promptly" to each of them. App. at 10. Furthermore, the district court specifically found that the School District "should have known the identity of AuClair and other out-of-state schools or should have ascertained their identity" before it did, and that Lester was harmed by their failure to do so. App. at 13. For sixteen months the School District failed to apply on Lester's behalf for admission to any school, and during the thirty months of inappropriate placement, Lester regressed. Because of this, we hold that the district court did not abuse its discretion when it fashioned this remedy for Lester.[12] The court's award merely compensates Lester for what everyone agrees was an inappropriate placement from 1984 through January, 1987 and belatedly allows him to receive the remainder of his free and appropriate public education.

## VI.
## CONCLUSION

We conclude that, under the EHA, Lester is entitled to the 30 months of compen-

---

10. The 1986 statutory amendment of the EHA superseded *Smith* by allowing protected beneficiaries to pursue federal statutory rights and remedies outside the EHA, H.R.Rep. No. 296, 99th Cong., 1st Sess. 4 (1985); Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372, § 3, 100 Stat. 796 (1986), but it supports the congressional language quoted in *Smith.*

11. *Alexopulos v. Riles,* 784 F.2d 1408, 1412–13 (9th Cir.1986) is distinguishable. *Alexopulos* characterized his complaint as one for equitable injunctive relief. Thus, unlike Lester, he was not just asking for compensation. Alternatively, we would reject the rationale of *Alexopulos* which ignores the principle that the remedy may exceed the scope of the right in order to cure the statutory violation. *Burr v. Ambach,* 863 F.2d 1071, 1078 (2d Cir.1988), *vacated and remanded on other grounds sub nom. Sobol v. Burr,* — U.S. —, 109 S.Ct. 3209, 106 L.Ed.2d 560 (1989), *reaff'd,* 888 F.2d 258 (2d Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1298, 108 L.Ed.2d 475 (1990).

12. We express no opinion whether the time a school district spends in a good faith effort to place a handicapped student into an appropriate program should or must always be included within the period for which compensatory education is awarded.

satory education provided by the district court, that this issue is ripe for decision and that Lester did not need to exhaust the EHA's administrative remedies. Finally, we hold that a Pennsylvania school district, even in its special education capacity, does not acquire the Commonwealth's eleventh amendment immunity. The district court's order of November 9, 1989 will be affirmed.