PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 09-1587

———

FERREN C.;
RONALD C.;
LESLIE C.

v.

SCHOOL DISTRICT OF PHILADELPHIA,

Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-08-cv-00858)
District Judge:  Honorable Stewart Dalzell

———

Argued April 13, 2010
Before:  FISHER, HARDIMAN
and COWEN, *Circuit Judges*.

(Filed: July 13, 2010)

Kara H. Goodchild (Argued)

Miles H. Shore
School District of Philadelphia
Office of General Counsel
440 North Broad Street, Suite 313
Philadelphia, PA  19130-4015
    *Counsel for Appellant*

Dennis C. McAndrews
Gabrielle C. Sereni (Argued)
McAndrews Law Offices
30 Cassatt Avenue
Berwyn, PA  19312
    *Counsel for Appellees*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

This appeal arises from an order of the District Court, entered January 28, 2009, reversing in part the Opinion of the Special Education Appeals Panel and granting equitable relief under the Individuals with Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C. § 1400, *et seq.*, to Appellee Ferren C. The District Court ordered Appellant, the School District of Philadelphia, to annually do the following for the duration of the three years of Ferren's previously awarded compensatory education:  reevaluate her, develop and issue an Individualized Education Plan, and serve as her Local Education Agency.  The

2

School District argues that the relief granted was not appropriate because Ferren is no longer entitled to the protections of the IDEA since she is over the age of twenty-one, and that the District Court's order is inconsistent with the purposes of the IDEA. Because we find that the District Court had the equitable power under the IDEA to grant relief of this nature and because the relief furthers the purposes of the IDEA, we will affirm the order of the District Court.

## I.

Appellee Ferren C. ("Ferren") is a twenty-four-year-old woman who suffers from various disabilities, including autism, speech and language deficits, and pervasive developmental disorder. Ferren requires highly structured, systematic instruction that is specifically keyed to her particular educational needs. Ferren's parents lack the training and experience to develop a compensatory education program for her.

At all relevant times, Ferren lived within the jurisdiction of the School District of Philadelphia (the "School District"). The School District identified Ferren as eligible for special education services under the IDEA. Failures on the part of the School District to provide adequate special education to Ferren gave rise to various legal disputes between the School District and Ferren's family. In resolution of these past disputes, the School District established a trust fund in excess of $200,000 to provide Ferren with three years of compensatory education past her twenty-first birthday. There is no dispute between the parties as to the amount of the trust fund or whether Ferren is entitled to the three years of compensatory education.

3

For three school years from 2004 to 2007, Ferren attended the Elwyn-Davidson School ("Elwyn"), which is an Approved Private School under the IDEA, and received a basic academic program, transition activities, and speech and occupational therapy. Elwyn requires all enrolled students to have an Individualized Education Plan ("IEP") and is capable of performing much of the underlying work required to develop and revise an IEP. When Elwyn develops an IEP, a school district is not involved in the drafting, but because Elwyn is not a Local Education Agency ("LEA"), it nevertheless requires a student's home school district to sign the IEP and serve as the student's LEA. The student's parents, the School District, and Elwyn staff do, however, work together to determine if the IEP is appropriate under the IDEA.

The 2006-07 school year was the last year Ferren attended Elwyn with an IEP issued by the School District. It was during that school year that Ferren turned twenty-one. Per the terms of its license, Elwyn does not typically educate students past the age of twenty-one, but has previously done so in cases of compensatory education. The School District has acknowledged that Elwyn provided Ferren with appropriate education and is capable of providing Ferren with compensatory education in the future. Ferren's parents hoped to keep Ferren enrolled at Elwyn, despite her age, and planned to utilize the compensatory education trust funds for her tuition.

On September 6, 2006, shortly before Ferren turned twenty-one, the School District agreed with Elwyn to schedule Ferren's graduation for 2010, which was three years beyond the school year during which she turned twenty-one. On January 3,

2007, the School District reversed course and informed Elwyn that Ferren should graduate at the end of the 2007 school year because she was over the age of twenty-one and was no longer entitled to an IEP under the IDEA. Elwyn informed the School District that it would not graduate Ferren until the School District confirmed that it had satisfied its compensatory education obligations to Ferren. Elwyn received no response from the School District and, consequently, did not graduate Ferren in the spring of 2007.

In June 2007, Elwyn informed the School District that it would provide compensatory education to Ferren past her twenty-first birthday if the School District paid the entire cost of the services, provided Ferren with annual IEPs, and served as her LEA. The School District agreed to provide the necessary funding for tuition through Ferren's previously established trust fund, but refused to provide IEPs and to serve as the LEA.

Ferren's parents requested a special education due process hearing to address the School District's refusal to provide Ferren with the additional services requested by Elwyn. The Hearing Officer issued a decision in October 2007, concluding that the School District was not required to provide Ferren with an IEP during the three-year compensatory education period. The family appealed this decision to the Pennsylvania Special Education Appeals Panel ("Appeals Panel"), which subsequently affirmed the Hearing Officer's decision.

On February 21, 2008, Ferren brought an action in the United States District Court for the Eastern District of

Pennsylvania challenging the administrative decisions of the Hearing Officer and Appeals Panel. Both parties submitted motions for judgment on the administrative record. In a January 28, 2009 order, the District Court ordered the School District for the duration of her three years of compensatory education to annually reevaluate Ferren, provide her with annual IEPs, and serve as her LEA.

The School District filed a timely notice of appeal challenging the District Court's grant of equitable relief to Ferren.[1]

II.

---

[1]The District Court was also faced with the question of whether Ferren's placement at Elwyn was pendent during these judicial proceedings under the stay-put provision of the IDEA. *See* 20 U.S.C. § 1415(j). Under the relevant part of that provision, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." *Id.* The District Court denied Ferren's request for pendency as a statutory right under section 1415(j) finding that the IDEA does not protect young adults who are over the age of twenty-one. The District Court also declined to find Ferren's placement pendent as a matter of equitable relief. These issues are not challenged by either party on appeal.

The District Court had jurisdiction over the appeal from the Appeals Panel under 20 U.S.C. § 1415(i)(2)(A). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We review the District Court's award of an equitable remedy under the IDEA for abuse of discretion. *Lester H. v. Gilhool*, 916 F.2d 865, 872 (3d Cir. 1990). "An abuse of discretion occurs when a district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *P. N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006) (internal quotation marks and citation omitted). To the extent a district court's grant of equitable relief is based on a legal determination, we exercise plenary review. *Id.*

III.

We must determine whether the compensatory education awarded to Ferren by the District Court was permitted under the IDEA.

The IDEA requires States that receive federal funding to provide a free appropriate public education ("FAPE") to all disabled students. 20 U.S.C. § 1412(a)(1)(A). Under the IDEA, a school district's obligations to provide and a student's right to receive a FAPE both terminate when the child reaches the age of twenty-one. 20 U.S.C. § 1412(a)(1)(A); *Lauren W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007). "The core of [the] entitlement [to a FAPE] is provided by the IEP, the package of special educational and related services designed to meet the unique needs of the disabled child." *Carlisle Area Sch.*

7

*v. Scott P.*, 62 F.3d 520, 526 (3d Cir. 1995). The IDEA does not set forth definitive guidelines for the formulation of an IEP, but at a minimum, "[t]he IEP must be 'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's 'intellectual potential.'" *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004) (quoting *Polk v. Cent. Susquehanna Interm. Unit 16*, 853 F.2d 171, 181 (3d Cir. 1988)); *see also* 20 U.S.C. § 1414(d)(1)(A); *Bd. of Educ. v. Rowley*, 458 U.S. 176, 189 (1982). The right to a FAPE ensures that students with special education needs receive the type of education that will "prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

Individuals who believe that their rights under the IDEA have been violated are permitted to bring a civil action in federal court. *See* 20 U.S.C. § 1415(i)(2). To resolve these claims, the IDEA permits a court to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). The Act is silent, however, as to what type of relief is "appropriate." In addressing what is "appropriate" relief under the IDEA, the Supreme Court concluded that the "only possible interpretation [of section 1415(i)(2)(C)(iii)] is that the relief is to be 'appropriate' in light of the purposes of the act." *Burlington v. Massachusetts*, 471 U.S. 359, 369 (1985). The purposes of the Act are explicitly stated in its text. Two of these purposes are relevant to our analysis:

> (1)(A) to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and

8

related services designed to meet their unique needs and prepare them for further education, employment, and independent living;

(B) to ensure that the rights of children with disabilities and parents of such children are protected;

20 U.S.C. § 1400(d).  In evaluating whether the District Court's grant of equitable relief under the IDEA was appropriate, we must determine whether the relief granted furthers the above-stated purposes of the Act.

The relief granted by courts under section 1415(i)(2)(C)(iii) is primarily compensatory education. Compensatory education, however, is not defined within the IDEA and is a judicially created remedy.  It is intended as "a remedy to compensate [the student] for rights the district already denied . . . because the School District violated [the] statutory rights while [the student] was still entitled to them." *Lester H.*, 916 F.2d at 872.  The Court of Appeals for the District of Columbia has stated that compensatory education serves to "replace[] educational services the child should have received in the first place" and that such awards "should aim to place disabled children in the same position they would have occupied but for the school district's violations of IDEA." *Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005).  Federal courts began awarding compensatory education after the Supreme Court determined in *Burlington* that tuition reimbursement was an appropriate remedy under the Education of the Handicapped Act, 20 U.S.C. §§ 1401-1461 (1983)

9

(IDEA's predecessor). 471 U.S. at 370-71. Despite the text of section 1412(a)(1)(A), which statutorily limits a school district's obligation to provide a FAPE only to students under the age of twenty-one, an individual over that age is still eligible for compensatory education for a school district's failure to provide a FAPE prior to the student turning twenty-one. *Lester H.*, 916 F.2d at 872. A court may grant compensatory education in such cases through its equitable power under section 1415(i)(2)(C)(iii).

In this case, the District Court acknowledged that because of her age, Ferren no longer had a statutory right to FAPE. *See* 20 U.S.C. § 1412(a)(1)(A). However, Ferren was still eligible for equitable relief. The District Court determined that the statutory age bar did not limit the available form of relief to a monetary award of compensatory education. Rather, the District Court concluded that it had the equitable power under section 1415(i)(2)(C)(iii) to order the School District to provide Ferren, who was past her twenty-first birthday, with annual IEPs and to serve as her LEA for the duration of her compensatory education.

In fashioning discretionary equitable relief under the IDEA, a court must "consider all relevant factors." *Florence County Sch. Dist. v. Carter*, 510 U.S. 7, 16 (1993). Accordingly, the District Court weighed "the interests of finality, efficiency, and use of the School District's resources with the compelling needs of Ferren and her family" and concluded, based on the specific facts of this case, that the equitable award was appropriate to further the purposes of the

10

IDEA.  *Ferren C. v. Sch. Dist. of Philadephia*, 595 F. Supp. 2d 566, 578-80 (E.D. Pa. 2009).

We agree with the District Court's conclusions that (1) it had the power to award this type of specific non-monetary equitable relief, and (2) that the award was appropriate under the IDEA based on the specific facts of this case.

In both *Burlington* and *Forest Grove School District v. T.A.*, __ U.S. __, 129 S. Ct. 2484 (2009), the Supreme Court declined to limit courts' discretion in granting equitable relief under the IDEA.

In *Burlington*, the Supreme Court held that section 1415(i)(2)(C)(iii)'s grant of authority includes "the power to order school authorities to reimburse parents for their expenditures on private special education services if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act."  471 U.S. at 369.  The Court reasoned that "a final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed."  *Id.* at 370.  Parents who disagree with a school's proposed IEP face the choice of continuing in public school with the deficient IEP or paying for more appropriate schooling.  If the parents choose private school, "it would be an empty victory to have a court tell them several years later that they were right [in their choice for private school] but that these expenditures could not in a proper case be reimbursed by the school officials."  *Id.*  As such, the Court concluded that in mandating that participating States provide a FAPE for every student, Congress could not have

intended to require parents either to accept an inadequate public-school education pending adjudication of their claim or bear the cost of a private education if the court ultimately determined that the private placement was proper under the Act. *Id.*

In *Forest Grove*, the Court addressed whether, under the IDEA, awarding reimbursement for private education was appropriate when the student had never received special education through the public school system. 129 S. Ct. at 2488. The student in *Forest Grove* was removed by his parents from public school and placed in private school. He never received special education services from the public school district. His parents then requested a hearing for his eligibility for special-education services under the IDEA. The school district argued that the IDEA categorically barred reimbursement unless a child has "previously received special education or related services under the [school's] authority." *Id.* at 2486 (citing 20 U.S.C. 1412(a)(10)(C)(ii)).

The Supreme Court disagreed and found that while the specific circumstance in that case was not explicitly provided for in the IDEA, private school reimbursement was appropriate relief under equitable principles pursuant to 20 U.S.C. § 1415(i)(2)(C). The Court reasoned that "[w]ithout [this reimbursement], a 'child's right to a free appropriate education . . . would be less than complete.'" *Id.* at 2495-96 (citing *Burlington*, 471 U.S. at 369). As such, the Court found that the IDEA did not categorically bar reimbursement of private education tuition if a child had not previously received special education and related services through the public school.

12

While neither *Burlington* nor *Forest Grove* addressed the specific type of equitable relief granted in this case, we find nothing in the text of those opinions that forecloses the type of equitable award provided to Ferren by the District Court. Nor do we find case law from our sister circuits that supports the argument that a court's power to grant equitable relief under the IDEA is simply limited to monetary awards.

Applying the standard set forth in *Burlington*, we find that the relief granted here was "appropriate" under the IDEA because it furthers the purposes of the Act. *See Burlington*, 471 U.S. at 369 (relief under section 1415(i)(2)(C)(iii) is "appropriate" if it furthers the purposes of the IDEA). Ferren's specialized education at Elwyn will address her "unique needs and prepare [her] for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). The equitable relief will further ensure that Ferren's educational rights under the IDEA are enforced and that she receives the education to which she was statutorily entitled. *Id.* at § 1400(d)(1)(B).

The School District has already funded a trust fund to provide Ferren with compensatory education. The purpose of this monetary award – to make up for past failures on the part of the School District – would be frustrated because Ferren could not remain at Elwyn without the School District providing IEPs and serving as Ferren's LEA. Elwyn is able to provide Ferren with the unique educational services that her severe disabilities require. Allowing the School District to refuse to provide IEPs and to simply fund Ferren's compensatory education would undoubtedly further hamper Ferren's education and deprive her of her educational rights under the IDEA.

13

Finally, a "money-only" type of award for Ferren is exactly the type of empty victory that the Supreme Court sought to avoid in *Burlington*. 471 U.S. at 370. During her time in the School District, Ferren was deprived of a FAPE, and, by extension, an IEP. Compensatory education is "a remedy to compensate [] for rights the district already denied." *Lester H.*, 916 F.2d at 872. If an individual was deprived of his or her right to an adequate FAPE, and by extension an IEP, prior to the age of twenty-one, it follows that the student could only be fully compensated by an award of compensatory education that contains the elements of a FAPE that she was previously denied. There is nothing in the IDEA that evinces Congressional intent to limit courts' equitable power to awards of only financial support. In certain cases, such as the one here, monetary awards can not fully compensate a student for a school district's past failures.

The School District expressed concerns that by extending its obligations to provide an IEP past a student's twenty-first birthday we open the door to a large number of other students seeking IEPs as a part of compensatory education past their twenty-first birthday and will subject the School District to ongoing litigation costs as challenges are made to the adequacy of these IEPs. While we acknowledge these legitimate concerns given the budget constraints faced by school districts, both arguments are ultimately unavailing.

The District Court in its opinion was careful to note, and we echo its conclusion, that this specific type of equitable relief would only be granted on a case-by-case basis, depending on the specific situation of each student. In each case, a court will

14

evaluate the specific type of relief that is appropriate to ensure that a student is fully compensated for a school district's past violations of his or her rights under the IDEA and develop an appropriate equitable award. Further, any additional litigation over the adequacy of the compensatory education can be minimized if the School District simply complies with the requirements of the IDEA.

## IV.

For the foregoing reasons, we will affirm the District Court's order awarding compensatory education to Ferren.

15