**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2439
_____

G. S. & S. S. O/B/O B.S.,
                                        Appellants
v.

CRANBURY TOWNSHIP BOARD OF EDUCATION
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 10-cv-00774)
District Judge:  Honorable Freda L. Wolfson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 2, 2011
Before:  RENDELL, FUENTES AND WEIS, Circuit Judges
(Opinion filed: November 8, 2011)
_____

OPINION
_____

PER CURIAM.

        G.S. and S.S. (the "Parents"), on behalf of their minor son, B.S., appeal

from the District Court's order granting summary judgment on the administrative record

in favor of the Cranbury Township Board of Education ("Cranbury").  For the following

reasons, we will affirm.

The claims at issue in this case arise under the Individuals with Disabilities Education Act (the "IDEA"), which requires states to provide a "free appropriate public education" ("FAPE") to each disabled child between the ages of three and twenty-one. See 20 U.S.C. § 1412(a)(1)(A). States meet this requirement by creating for each disabled student an "individualized education plan" ("IEP"), which sets out a "package of special educational and related services designed to meet the unique needs of the disabled child." Ferren C. v. Sch. Dist. of Phila., 612 F.3d 712, 717 (3d Cir. 2010) (internal quotation marks and citation omitted). To satisfy the IDEA, an IEP must be "'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's 'intellectual potential.'" Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 198 (3d Cir. 2004) (citation omitted).

Parents who believe that a public school is not providing a FAPE may unilaterally remove their disabled child from that school, place him in another school, and seek tuition reimbursement for the cost of the alternate placement. 20 U.S.C. § 1412(a)(10)(C); Burlington Sch. Comm. v. Dep't of Educ., 471 U.S. 359, 374 (1985). A court may grant tuition reimbursement if the school district failed to provide the required FAPE and the parents sought an appropriate private placement. Lauren W. v.

DeFlaminis, 480 F.3d 259, 276 (3d Cir. 2007); see also Forest Grove Sch. Dist. v. T.A., --- U.S. ----, 129 S. Ct. 2484, 2492 (2009).

## B.

B.S. is a fifteen-year-old student who is eligible for special education and related services under the IDEA. According to his parents, B.S. has multiple handicaps including pervasive developmental disorder, attention deficit hyperactivity disorder, sensory integration difficulties, tendency towards preoccupation, and obsessive-compulsive tendencies. B.S. is also short for his age, which generally makes it difficult for him to adjust to his surroundings.

B.S. attended the Cranbury School from second through eighth grades, during which time he was enrolled in some mainstream courses, but also received various educational accommodations. In eighth grade, for example, B.S. attended algebra and French in the general education setting, science with in-class support, replacement English and social studies, speech as a related service, physical therapy, and adaptive physical education.

In 2008, the Child Study Team ("CST") at Cranbury began to consider high school placements for B.S. in anticipation of his eighth-grade graduation in June 2009. After considering numerous placements, the Cranbury CST proposed to transition B.S. into the mainstream Princeton High School. On January 29, 2009, the Parents, members of the Cranbury CST, and a member of the Princeton CST conducted an Individualized Education Plan ("IEP") High School Review meeting. The IEP recommended that B.S.

3

receive replacement English by a special education teacher during his freshman year at Princeton, but that he receive the state core curriculum, with certain accommodations, in all other areas. The IEP also recommended in-class speech language services as well as continued participation in a social skills group on a pull-out basis. In addition, the IEP provided for an aide at Princeton to assist B.S. with transition periods and organizational skills, and to facilitate social interactions with peers.

The Parents disagreed with the recommendations in the IEP and indicated that they wanted their son to attend the Lewis School, a private school in Princeton, New Jersey, instead. In fact, it appears that the Parents had actually already entered into a contract with the Lewis School well before the issuance of the IEP. The Cranbury CST did not, however, view the Lewis School as a viable option for B.S. because, among other reasons, B.S.'s participation in an extended school year ("ESY") program there in 2008 was problematic.[1]

At some point after meeting with Cranbury and receiving a copy of the IEP, the Parents filed a request for a due process hearing to challenge the IEP. See 20 U.S.C. § 1415(f). At the hearing before an Administrative Law Judge ("ALJ"), the Parents

---

[1] The ALJ found that the fact that the Parents had entered into a contract with the Lewis School prior to the IEP meeting, and had not disclosed that fact to Cranbury, demonstrated a lack of good faith in their "attempt[] to pursue an appropriate placement for B.S." (DA129.) The District Court noted that, although parents must demonstrate that they acted in good faith in order to obtain reimbursement, see Lascari v. Bd. of Educ. of Ramapo Indian Hills Reg'l High Sch. Dist., 560 A.2d 1180, 1191 (N.J. 1989), it need not reach that issue here in light of its finding that the IEP was, in any event, appropriate under the IDEA.

4

claimed that B.S.'s needs would not be met at Princeton High School, and urged

placement at the Lewis School.[2] In support of their position, the Parents presented expert

testimony by Dr. Margaret J. Kay, who had conducted an independent educational

evaluation ("IEE") of B.S. In her report, Dr. Kay explained that, due to his

developmental disorder, B.S. needed accommodations such as a predictable schedule;

small, structured classes; organization skills monitored on a daily basis; extended time to

complete assignments; oral tests in lieu of written examinations; and frequent breaks

from reading and writing activities. Dr. Kay opined that Princeton High School was not

an appropriate placement for B.S. because it could not provide all of these

accommodations. According to Dr. Kay, the Lewis School was a better fit. For its part,

Cranbury provided testimony by B.S.'s case manager at Cranbury, the Cranbury CST

supervisor and speech and language therapist, one of B.S.'s teachers who was also a

member of the IEP team, and the special education supervisor at Princeton, all of whom

stated that B.S.'s needs could be met at Princeton High School.

After considering testimony from both sides and reviewing all of the

evidence, the ALJ found that the IEP provided B.S. a FAPE at Princeton High School in

accordance with the IDEA. Specifically, the ALJ found that:

> [T]he proposed IEP sets forth specific goals and objectives and
> identifies various, personalized accommodations in order to provide for the
> needs of B.S. and reflects a high degree of sensitivity to his needs and an
> awareness of his strengths and weaknesses. In the process, the

---

[2] The parties attended a mediation session in May 2009 but were unable to reach agreement.

determination to place him at Princeton High School represents a comprehensive collaboration between both the sending district and the receiving district as B.S. was positioned to transition out of the eighth grade. Regretfully, however, the parents failed to provide them with the opportunity to execute on that plan and their decision [to unilaterally place B.S. at the Lewis School] was inappropriate and contrary to a good faith effort to work on a realistic, reasonable solution for the benefit of B.S., notwithstanding their professed fears regarding his ability to acclimate in such a setting in that regard. Thus, I am not convinced that the trepidations expressed by the parents have been corroborated by a preponderance of the credible evidence. Rather, the district appears to have been totally responsive and receptive to addressing and/or accommodating the needs of this young man as he continues to exhibit growth and development during these critical formative years in his life.

(DA133.) Because the ALJ found that Cranbury had met its obligations under the IDEA, he concluded that Cranbury was not obligated to reimburse the Parents for tuition, transportation, or other costs associated with their unilateral placement of B.S. at the Lewis School.

In February 2010, the Parents brought an action in the United States District Court for the District of New Jersey challenging the administrative decision. Both parties filed motions for summary judgment, which the court construed as requests to decide the case on the administrative record. See Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997). In a carefully reasoned 34-page opinion, the District Court upheld the ALJ's decision in its entirety, finding that Cranbury had complied with the IDEA's procedural requirements and that its IEP was reasonably calculated to enable B.S. to receive educational benefits. Accordingly, the District Court entered judgment in Cranbury's favor. The parents now appeal from the District Court's order.

6

**II.**

We have jurisdiction to review the District Court's final order pursuant to

28 U.S.C. § 1291. See Lauren W., 480 F.3d at 265. A district court considering an IDEA

claim makes its own findings under a "modified de novo" standard, whereby it affords

"due weight" to the administrative findings. Id. at 266. We exercise plenary review of a

district court's legal conclusions, but review the court's factual findings for clear error.

Id. "[T]he issue of whether an IEP is appropriate is a question of fact." P.P. v. W.

Chester Area Sch. Dist., 585 F.3d 727, 734-35 (3d Cir. 2009) (internal quotation marks

and citation omitted).

When parents challenge a school's provision of a FAPE to a child, a

reviewing court must (1) consider whether the school district complied with IDEA's

procedural requirements and (2) determine whether the educational program was

"reasonably calculated to enable the child to receive educational benefits." Bd. of Educ.

v. Rowley, 458 U.S. 176, 206-07 (1982). To be appropriate under the IDEA, an IEP

must provide "'meaningful' access to education and confer 'some educational benefit'

upon the child for whom it is designed." Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238,

247 (3d Cir. 1999) (quoting Rowley, 458 U.S. at 192, 200), superseded by statute on

other grounds as stated in P.P. v. W. Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir.

2009). We have explained that the educational benefit must be more than "trivial," and

must offer the potential for "significant learning" and "meaningful benefit." Id.

7

On appeal, the Parents first argue that the District Court erred in rejecting their claim that Cranbury failed to comply with the IDEA's procedural requirements in several respects. The District Court found that the Parents had waived these procedural challenges by failing to raise them before the ALJ. See David D. v. Dartmouth Sch. Comm., 775 F.2d 411, 424 (1st Cir. 1985). The Parents do not challenge this finding in their opening brief. Therefore, any such challenge has been waived. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).[3]

Next, the Parents argue that the District Court erred in determining that the proposed IEP was "reasonably calculated to enable [B.S.] to receive educational benefits." See Rowley, 458 U.S. at 207. Specifically, the Parents claim that the IEP was inappropriate because: (1) B.S. functions as a much younger child in a number of critical social, academic, and vocational areas; (2) the 2009-2010 IEP does not include special instruction individually designed for B.S.; (3) the IEP is not based on peer-reviewed research; (4) Princeton High School has numerous "areas of need" regarding its ability to

---

[3] In any event, we agree with the District Court that the alleged procedural violations are either substantive in nature (and addressed below) or without merit. See D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 565 (3d Cir. 2010) (explaining that a procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits). With respect to the Parents' argument that the District Court inappropriately placed the burden of proof on them when it stated that they had "not demonstrated that Cranbury failed to comply with the procedural requirements of the IDEA," (DA22), we note that the District Court was referring to their burden in that court, not their burden at the administrative hearing.

provide a FAPE; and (5) Cranbury failed to provide an ESY for the 2009 summer.  After reviewing the relevant portions of the record, we perceive no error in the District Court's resolution of these claims.

First, the District Court found that, contrary to the Parents' contention, the evidence indicated that B.S. would succeed at Princeton with accommodations and modifications similar to those he received at Cranbury.  We see no error in this regard.  As the court explained, although the record contains evidence that B.S. functions as a younger child in several respects, the weight of the evidence suggests that he performed well at Cranbury with accommodations and modifications, that he thrives on cognitive challenges, and that he would benefit from matriculating with his peers.  Furthermore, to the extent that the Parents rely on Dr. Kay's opinion that the Lewis School would be a better fit for B.S., we note that the District Court properly afforded due deference to the ALJ's finding that Dr. Kay's report contained "too many deficiencies" to be given "too much weight under the circumstances."  (DA133); D.S., 602 F.3d at 564 ("[A] District Court must accept the state agency's credibility determinations unless non-testimonial, extrinsic evidence in the record would justify a contrary conclusion.") (internal quotation marks, citation, and emphasis omitted).

Next, we discern no error in the District Court's conclusion that the 2009-2010 IEP was appropriate insofar as it included special instruction individually designed for B.S.  The District Court found that the IEP addressed B.S.'s unique needs by providing: (a) a list of goals and objective for B.S.; (2) classroom modifications such as

9

preferential seating, chunking of material, use of computers, use of spell check on a computer, and extra time for assignments; (3) supplementary aids; (4) mainstream classes in areas in which B.S. excels and pullout classes in areas in which he needs improvement; (5) speech-language services related to his replacement English class; (6) adaptive physical education; (7) a weekly social skills group; (8) physical therapy once a month; and (9) a one-to-one aide to assist B.S. during transition periods, to help with organizational skills, and to facilitate social interactions with his peers. The record supports the District Court's conclusion.

The Parents also argue that the IEP violated the IDEA by failing to include methods of instruction based on peer-review research in accordance with 20 U.S.C. § 1414(d), which provides that an IEP must include "a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable." Specifically, the Parents complain that the IEP should have included the Wilson Fluency program, a peer-reviewed method of instruction recommended by Dr. Kay. We agree with the District Court, however, that, given the ALJ's credibility determination, the IEP did not violate the Act by failing to incorporate all of Dr. Kay's recommended methods of instruction.

We also agree with the District Court that the record supports the ALJ's conclusion that Princeton High School's 2004 self-assessment does not demonstrate that the school is unable to provide a FAPE to B.S. Although the Parents argue that the self-assessment identifies several "areas of need"—such as understaffing in speech and

10

language—the ALJ found that it was too old to be given "any reasonable or relevant consideration." (DA134.) The ALJ went on to note that he had "not been provided with any timely New Jersey State educational mandate or directive which would have cited Princeton High School with any relevant or timely deficiencies." (Id.) In light of this record, we agree with the District Court and the ALJ that the 2004 self-assessment does not demonstrate that Princeton High School is unable to provide a FAPE to B.S.

Lastly, the Parents argue that the IEP was inappropriate because it failed to provide B.S. with an ESY for the summer of 2009. According to the ALJ, however, while the initial IEP did not contain an ESY placement, the IEP was eventually amended to provide for a summer program, and Cranbury in fact attempted to place B.S. in an ESY at Princeton High School for the summer of 2009. We have reviewed the record and conclude that the District Court did not clearly err in affirming this finding.

Because the District Court did not err in concluding that the IEP was appropriate and "reasonably calculated to enable [B.S.] to receive educational benefits," see Rowley, 458 U.S. at 207, the Parents were not entitled to reimbursement for unilaterally placing their son at the Lewis School, see 20 U.S.C. § 1412(a)(10)(C)(ii).[4]

_____

[4] On appeal, the Parents argue that the District Court should have deemed their Statement of Facts undisputed pursuant to New Jersey Local Civil Rule 56.1 because Cranbury failed to respond to the Parents' submission. See D.N.J. L. Civ. R. 56.1(a) (requiring the non-moving party to furnish "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement," and providing that "any material fact not disputed shall be deemed undisputed"). It appears, however, that the District Court excused Cranbury's failure to strictly comply with Rule 56.1(a), and relied instead on Cranbury's Statement of Undisputed Facts to adjudicate the

## III.

We have reviewed the Parents' remaining arguments and conclude that they are without merit. Accordingly, we will affirm.

---

cross-motions.