NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 14-3322 and 14-4057
_____


NORRISTOWN AREA SCHOOL DISTRICT,
                                                            Appellant

v.

F.C., By and Through His Parents; F.C.; D.C.


_____


On Appeal from the District Court
for the Eastern District of Pennsylvania
D.C. Civil No. 2-13-cv-05612
District Judge: Honorable Legrome D. Davis
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 27, 2015

Before: GREENAWAY, JR., SCIRICA, and ROTH, Circuit Judges

(Filed: January 8, 2016)


_____


OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

The Norristown Area School District (school district) appeals an order from the United States District Court for the Eastern District of Pennsylvania awarding compensatory education to a student, F.C., and his parents for failing to provide F.C. with a free and appropriate public education (FAPE) for his second- and third-grade school years under the Individuals With Disabilities Education Act, 20 U.S.C. § 1400 et seq. The school district also appeals the award of attorneys' fees and costs under IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B)(i)(l). These cases have been consolidated on appeal. We will affirm.[1]

I.

F.C. is an eleven-year-old Pennsylvania student who attended public school in the school district from the start of kindergarten in 2009 through the end of second grade in 2012. Prior to kindergarten, the school district completed an evaluation of F.C. and concluded he had autism and speech and language impairment and was in need of specially designed instruction, as required under IDEA, 20 U.S.C. § 1401(29). The school district implemented an Individualized Education Plan (IEP) for F.C.'s kindergarten school year that placed him in a separate classroom with seven children and two paraprofessionals for full-time autistic support.

F.C.'s initial first-grade IEP placed him in the same full-time autistic-support

---

[1] The trial court had subject matter jurisdiction over the merits of this case under the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(i)(2)(A); *see also* 22 Pa. Code § 14.162(o). It also had jurisdiction over the attorneys' fees claim under 20 U.S.C. § 1415(i)(3)(B)(i). We have appellate jurisdiction over both claims under 28 U.S.C. § 1291.

classroom he had attended in kindergarten. The teacher and behavior management services were also the same, and the teacher-to-student ratio remained three to six or seven. F.C. attended this full-time autistic-support class until January 24, 2011. Then, under an inclusion plan issued by the school district as part of its mainstreaming efforts under IDEA,[2] F.C. began transitioning out of the full-time support classroom to a general classroom of twenty to twenty-three students. By the end of first grade, out of a school day of six hours and five minutes, F.C. spent two hours and twenty minutes (about 38 percent) in the general classroom without one-on-one support.[3]

Initially, F.C.'s second-grade IEP recommended he continue attending the autistic-support classroom for most subjects. But in June 2011, F.C.'s IEP team changed his second-grade IEP dramatically. Under the revised IEP, F.C. would receive all of his academic subjects in the general second-grade classroom without one-on-one paraprofessional support, except for writing instruction, which he would receive in a learning-support classroom. This meant that 87 percent of his total school day would be in the general classroom without one-on-one support. This IEP was implemented at the start of F.C.'s second-grade year.

Early into second grade, F.C.'s behavior started to regress. F.C. had trouble

---

[2] Inclusion plans are part of the school district's efforts to "mainstream" students with disabilities through gradual inclusion into general-education classrooms. Mainstreaming is required under 20 U.S.C. § 1412(5)(B). *See Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1206 (3d Cir. 1993).

[3] F.C. had the assistance of a paraprofessional in the general classroom or in the autistic-support classroom for three hours and forty minutes (220 minutes) of the six hour and five-minute (365 minutes) school day, and was in the general classroom without one-on-one support for two hours and twenty minutes (140 minutes). The extra five minutes were transition time.

staying on task and his classroom interruptions began to impede his learning and that of other students. By January 2012, F.C. had not "complete[d] a task without some type of support." In response to F.C.'s problems integrating into the general classroom, F.C.'s IEP team updated his IEP in January 2012. For the first time, F.C.'s IEP team checked a preprinted box on the IEP indicating that he "exhibit[s] behaviors that impede[] his/her learning or that of others."[4] Preprinted language on every IEP states that if this box is checked, "[t]he IEP team must develop a Positive Behavior Support Plan (PBSP) that is based on a functional assessment of behavior and that utilizes positive behavior techniques." It had not been checked on previous IEPs.

In April 2012, a new IEP was issued for F.C.'s third-grade school year (2011–12). There was no PBSP in this IEP.[5] Moreover, F.C.'s one-on-one paraprofessional support had an anticipated duration of November 2012, even though the anticipated duration for every other program modification was April 2013. The school district revised F.C.'s third-grade IEP in June 2012 to add a PBSP,[6] but the anticipated duration of F.C.'s paraprofessional support remained November 2012.

The parents refused to sign this IEP, viewing it as inadequate, and enrolled F.C. in the Stratford Friends School for the start of third grade. Stratford Friends is a small private school that educates students with language-based learning difficulties. F.C.'s third-grade class had eleven children and two teachers and F.C. received significant individualized attention.

---

[4] According to the hearing officer, this box should have been checked earlier.
[5] The box indicating F.C. disrupted his learning and that of others was also checked in the April 2012 IEP.
[6] The parents also contend the PBSP was not fully filled out.

4

In April 2013, while F.C. was at Stratford Friends, the school district offered F.C. a new IEP that contained a transition plan and one-on-one individualized support for the remainder of third grade. F.C. remained at Stratford Friends for third grade.

## II.

The parents filed an administrative due process complaint against the school district on December 5, 2012, claiming the school district had denied F.C. a FAPE for first grade (2010–11), second grade (2011–12), and third grade (2012–13).[7] They sought compensatory education for first and second grade at the public school and tuition reimbursement for third grade at Stratford Friends. The hearing officer determined the school district had provided F.C. with a FAPE during first grade, but not second or third grade. The hearing officer ordered the school district to provide F.C. with two hours of compensatory education for each school day of second grade and thirty minutes of compensatory speech and language instruction for each week school was in session during F.C.'s second grade. He also ordered the school district to reimburse the parents for F.C.'s entire third-grade-year tuition at Stratford Friends.

The parents and the school district appealed the hearing officer's order to the trial court. The court upheld the hearing officer's determination that F.C. had not received a FAPE during second grade and affirmed the award of two hours per day of compensatory education. But it reversed the compensation award for speech and language instruction,

---

[7] "A parent who believes that a school has failed to provide a FAPE may request a hearing, commonly known as a due process hearing." *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 240 (3d Cir. 2009). In Pennsylvania, the hearing is conducted by a hearing officer. *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 527 (3d Cir. 1995). The burden of proof is on the party seeking relief. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005).

5

finding F.C. "had met his remediation goals" in this area. The court also affirmed the hearing officer's findings that the school district had failed to offer F.C. a FAPE for third grade and that Stratford Friends was an appropriate placement. The school district appealed.

The parents subsequently filed a motion for attorneys' fees and costs on July 9, 2014. Finding the parents "[were], overall, very successful" on the merits of their claims, the trial court awarded the parents $139,629.34 for their reasonable attorneys' fees and costs. The school district appealed.

### III.

Contrary to the school district's assertions, the court applied the correct legal standard.[8] IDEA requires states to use federal education funding to make a FAPE available to each child with a disability in the state. 20 U.S.C. § 1412(a)(1). A FAPE must provide a "meaningful benefit" to the child, *Polk v. Ctr. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 184 (3d Cir. 1988), and be "specially designed to meet the unique needs of the handicapped child," *Bd. of Educ. v. Rowley*, 458 U.S. 176, 188–89 (1982). A "meaningful benefit" must entail "more than a trivial educational benefit," *L.E. v. Ramsey Bd. of Educ.* 435 F.3d 384, 390 (3d Cir. 2006), but it does not have to maximize the child's potential, *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 556 (3d Cir. 2010). An education is "specially designed" if the IEP is made "in light of the student's intellectual

---

[8] We review the trial court's application of legal standards under IDEA *de novo*. *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004). We review the court's factual findings for clear error. *Id.*; *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1220 (3d Cir. 1993) (holding there is clear error if, "after reviewing the evidence," we are "left with a definite and firm conviction that a mistake has been committed" (internal quotation marks and citation omitted)).

6

potential." *Chambers v. Phila. Bd. of Educ.*, 587 F.3d 176, 182 (3d Cir. 2009) (internal citation omitted). Therefore, whether an education is "appropriate" depends on the individual child's abilities and needs.

The school district contends the court committed legal error by referencing "in light of his intellectual potential" when considering whether there was a "meaningful benefit," and by ignoring F.C.'s academic progress when evaluating whether the school district provided F.C. with a FAPE. We disagree. The language "in light of his intellectual potential" merely references the capabilities of the child when determining if the education provides a meaningful benefit. *See Rowley*, 458 U.S. at 184. Furthermore, the trial court clearly considered F.C.'s academic progress. In part, this is evident from the court's rejection of the hearing officer's compensatory-education award for speech and language instruction.

IV.

We also find unconvincing the school district's contention that the court made clear factual errors regarding the school district's provision of a FAPE to F.C. for second and third grade and its determination that Stratford Friends was an appropriate placement.

For second grade, the school district contends the court clearly erred regarding F.C.'s need for paraprofessional support because F.C. improved academically despite not having paraprofessional support for the last half of a ninety-minute reading block. This piece of evidence is not dispositive one way or the other, however, and based on our review of the record we find no error in the court's conclusion that one-on-one support in the general classroom was required for F.C. to receive a FAPE in second grade.

7

As for contesting the trial court's assessment of actual time F.C. spent in the general classroom at the end of first grade versus at the beginning of second grade,[9] the school district's argument ignores the court's overarching concern that one-on-one support was critical to F.C.'s ability to receive a FAPE in second grade. As the court found, "the School District knew or should have known that [F.C.] was unlikely to be successful in the general education classroom without one-on-one paraprofessional support." And in addition, "[F.C.'s] placement in a general education classroom may well have been appropriate, but the School District should have provided [F.C.] with the supplementary aids and services he needed to be successful in that environment."[10]

The school district also contends the court erred in holding that the school district failed to offer F.C. a FAPE for his third-grade year. We disagree. The June 2012 IEP, which was to be implemented during F.C.'s third-grade year, included one-on-one paraprofessional support, but its anticipated duration, November 2012, was five months earlier than that of every other modification. The school district contends that because the duration was anticipated and not actual, the parents could not preemptively remove F.C. from the school district and seek tuition reimbursement. But the adequacy of an IEP "can only be determined as of the time it is offered to the student, and not at some later date." *Fuhrmann v. E. Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir. 1993). Because one-

---

[9] The court stated that the school district "approximately doubled the percentage of time" F.C. spent in the general-education classroom from first to second grade.

[10] The school district also contends the court erred by stating the school district was legally required to develop a PBSP once the IEP box was checked "Yes" indicating F.C. was disrupting his learning and that of others. Although the parents made this erroneous assertion in their briefing before us, the trial court did not. Rather, the court found the school district was obligated "to develop a positive behavior support plan" based on the IEP and F.C.'s needs. We find no clear error in these findings.

8

on-one support was critical to F.C.'s ability to attain a "meaningful educational benefit," the parents were justified in questioning the adequacy of F.C.'s third-grade IEP and in removing him from the school district for third grade.

The school district also contends the trial court erred in not considering the April 2013 IEP (offered when F.C. was already enrolled at Stratford Friends) to determine the amount of compensation owed to the parents for F.C.'s third-grade year. Specifically, the school district contends that had the court reviewed the April 2013 IEP, it likely would have found the IEP offered F.C. a FAPE, thereby allowing F.C. to return for the last three months of third grade. Accordingly, the parents' compensation award should be reduced by three months of tuition. But when determining whether a transition from one school to another is proper, the student's welfare must be taken into account. *See, e.g., Louise G. v. Lower Merion Sch. Dist.*, 919 F. Supp. 793, 817 (E.D. Pa. 1996) (transitioning a disabled student from private to public school for the end of the year would have been "detrimental to her"); *Visco v. Sch. Dist.*, 684 F. Supp. 1310, 1315 (W.D. Pa. 1988) ("Once a student is making good progress in a particular program, a change must be viewed with a great degree of caution."). Here, the court found that transitioning F.C. in mid-April from Stratford Friends to the school district would have been harsh. We see no error, let alone clear error.[11]

Finally, the school district contends Stratford Friends was an inappropriate

---

[11] Although the school district contends the trial court committed clear error by failing to cite a specific place in the record suggesting the transition would be hard for F.C., it does not point us to anything in the record to refute the court's finding. Viewing the record in its entirety, and given F.C.'s difficulty transitioning from first to second grade, the trial court's finding that F.C. would have difficulty transitioning back to the school district is not clearly erroneous.

9

placement. Under IDEA, tuition reimbursement for parents' unilateral decision to place a child in a private placement is appropriate if "the [school district] has not made a free appropriate education available to the child in a timely manner prior to that enrollment." 20 U.S.C. § 1412(a)(1)(C)(ii). Reimbursement for such placements is permitted if the parents can show (1) the public school did not provide a FAPE; and (2) the private placement is "proper." *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993). A private placement is proper if "it provides significant learning and confers meaningful benefit" on the student. *Lauren W. v. DeFlaminis*, 480 F.3d 259, 276 (3d Cir. 2007) (internal quotation marks and citation omitted).

The school district specifically contends that neither the hearing officer nor the district court considered or addressed whether the placement was "proper" and ignored evidence suggesting Stratford Friends did not provide a meaningful benefit to F.C.[12] But the hearing officer found that F.C. did "derive a meaningful benefit" from Stratford Friends because F.C. received "beneficial instruction and remediation" in his areas of need.[13] And the trial court "agree[d] with the [h]earing [o]fficer," finding that: (1)

---

[12] The school district also criticizes Stratford Friends' lack of occupational therapy staff, which F.C.'s public-school IEP required. But a unilateral parental placement does not need to meet state education standards in order to be adequate. *See Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 14 (1993); *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 430 n.6 (3d Cir. 2013); *Lauren W. v. DeFlaminis*, 480 F.3d 259, 276 (3d Cir. 2007).

[13] The hearing officer made several findings regarding the adequacy of Stratford Friends. Stratford Friends is a small, accredited, private elementary school, and from kindergarten through sixth grade, students' work is ungraded. Students are grouped by age and ability, and for reading, writing, and math, students are grouped by specific needs. Stratford Friends assesses children in math and reading upon entry, and F.C. scored at a first-grade level in math and slightly above grade level for reading upon entry into third grade.

The hearing officer found that at Stratford Friends, F.C. received speech and language therapy from a certified speech pathologist, and that every two weeks, F.C.'s

Stratford Friends "specializes in educating children who, like [F.C.], experience language-based learning challenges;" (2) Stratford Friends has a low student-to-teacher ratio, which had been identified as critical to F.C.'s success; and (3) Stratford Friends provided the "highly structured nurturing environment" F.C. needed. The court concluded that Stratford Friends was an adequate and appropriate placement. Based on our review of the record, we see no clear error in these findings.[14]

---

teachers discussed and assessed his progress. F.C.'s reading and math classes only had six students, and they were positioned around the teacher such that she could "physically touch each student if necessary for redirection and for multisensory instruction." The hearing officer also found the parents were pleased with F.C.'s "academic, behavioral, and social progress since attending Stratford Friends."

[14] Based on our review of the record, the school district's contention that the court and the hearing officer overlooked evidence suggesting F.C. was regressing is not persuasive. After the first trimester at Stratford Friends, F.C.'s reading teacher noted that "[o]ver the course of [this] marking period, his attention and ability to follow class routines have improved." F.C.'s math teacher echoed this statement, explaining that after the first three months, F.C. "enjoyed math class and participated in all related games and activities" and demonstrated his "knowledge of the concepts presented." F.C. had difficulty staying focused in writing during the first trimester, but he "actively participated in . . . class."

During the second trimester, F.C. was introduced to four new areas of reading and was still able to progress or stay the same in each area. F.C. improved in math, and stayed the same in writing. F.C. arguably regressed slightly in speech and language, music, art, gym, and social/emotional progress. But F.C.'s teachers invariably equated F.C.'s struggles during this trimester with his need for "frequent prompts to remain focused and on task." And, despite F.C.'s ability to become distracted, F.C.'s teachers frequently noted that F.C. demonstrated strong interests in the subjects, actively participated, and was willing to try new activities. Moreover, the record suggests F.C. might have been acting out more because he was not taking one or more medications during the second trimester. Based on F.C.'s overall enthusiasm for school, his engagement and participation in class, and his acquisition of new skills, we do not believe the court committed clear error by accepting the hearing officer's findings and ultimate conclusion that Stratford Friends was a proper placement.

V.

The court's award of attorneys' fees was also proper.[15] IDEA's fee-shifting provision states: "In any action or proceeding brought under [IDEA], the court, in its discretion, may award reasonable attorney's fees as part of the costs . . . to the prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(l). "Generally speaking, a prevailing party is one who succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 501 (3d Cir. 2012). When a prevailing party is only partially successful the court can, in its discretion, reduce the award to reflect the partial success. *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983). But when a party's claims "involve a common core of facts or [are] based on related legal theories," and counsel's time was "devoted generally to the litigation as a whole," the "district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."

Contrary to the school district's contention, the court's award of attorneys' fees was not an abuse of discretion. The parents were only partially successful on their claims, but their claims arose from the same common core of facts, and they succeeded on two significant issues—whether the school district failed to provide F.C. with a FAPE for second grade and third grade. Moreover, the school district provides no legal support for

---

[15] We review the court's decision to award attorneys' fees for abuse of discretion. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001) (internal quotation marks and citation omitted) (holding an abuse of discretion can occur "if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous").

its contention that the court must follow a mathematical equation in determining the amount. Given the parents' success, we find the court did not abuse its discretion by awarding the parents $139,629.34 for reasonable attorneys' fees and costs.

VI.

For the foregoing reasons, we will affirm the court's orders granting the parents compensatory education, tuition reimbursement, and reasonable attorneys' fees.